# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>TELEXFREE LLC., <u>et al.</u>,[1]<br><br>    Debtors.<br><br>STEPHEN B. DARR AS TRUSTEE OF THE ESTATES OF TELEXFREE, LLC, TELEXFREE, INC. and TELEXFREE FINANCIAL, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>RITA DOS SANTOS, INDIVIDUALLY AND AS PUTATIVE CLASS REPRESENTATIVE,<br>AND<br>MARIA MURDOCH, ANGELA BATISTA JIMINEZ, ELISANGELA OLIVEIRA AND DIOGO DE ARAUGO, AS PUTATIVE CLASS REPRESENTATIVES,<br><br>    Defendants. | 4:18-cv-40007-TSH |

## PLAINTIFFS' INTERIM EXECUTIVE COMMITTEE'S
## MOTION FOR A STAY PENDING APPEAL AND STATEMENT OF REASONS

The Plaintiffs' Interim Executive Committee (the "PIEC"), appointed by this Court as the representative of the victims of the Debtors' Ponzi and pyramid scheme in the multi-district litigation proceedings captioned *In re TelexFree Securities Litigation*, MDL No. 14-02566 (D. Mass.), respectfully moves this Court, pursuant to Federal Rule of Appellate Procedure 8 for an order staying the Judgment accepting and adopting the Bankruptcy Court's Proposed Findings of

---

[1] The debtors (the "Debtors") in these cases (collectively, the "Chapter 11 Cases") are TelexFree, LLC, TelexFree, Inc., and TelexFree Financial, Inc.

Fact and Conclusions of Law and granting plaintiff's motion for summary judgment, entered in this action on September 26, 2018 [Docket No. 14] (the "<u>Judgment</u>"), while the Judgment is on appeal.  The PIEC has filed its Notice of Appeal concurrently with this motion.

The Judgment, which granted summary judgment to plaintiff Stephen B. Darr, as Trustee of the TelexFree Debtors in <u>Darr v. Dos Santos</u>, Adv. Pro. No. 15-4055 (Bankr. D. Mass.) (the "<u>Adversary Proceeding</u>"), and thereby denied the PIEC's motion for summary judgment, ensures that participant victims ("<u>Victims</u>") who paid money, often in cash, directly to recipient promoters (the "<u>Promoters</u>") cannot pursue actions directly against those Promoters to recover their funds, while the Trustee, who stands in the shoes of the wrongdoer Debtors, can continue to pursue its fraudulent transfer litigation against the Promoters, despite the fact that TelexFree never had a valid legal right to or possession or control over these funds.  The imminent destruction of Victims' rights to pursue those claims and consequent irreparable damage that will be caused to their rightful claims merits a stay pending the appeal of the Judgment.  Should the Trustee be permitted to continue his litigation against the Promoters, while preventing the PIEC from pursuing its claims against the Promoters, the Trustee could argue that such litigation could conceivably render the PIEC's litigation moot if the Judgment were overturned on appeal.

Given the unwarranted expansion of fraudulent transfer law that the Judgment would occasion if sustained on appeal, and the lack of precedent supporting the Judgment, there is a sufficiently strong likelihood of success of the appeal.  Issuing a stay will afford the appellate court the opportunity to consider the novel issues before it and will prevent a scenario in which the Trustee could argue that the Victims' claims against Promoters are rendered moot.

Moreover, and importantly, the Judgment affects the rights of approximately one million victims of TelexFree.  By the Trustee's own estimates, there are almost one million victims of

TelexFree's fraud, whose losses totaled more than $1.7 billion in the aggregate. However, only approximately 132,000 of these victims filed proofs of claim in the Chapter 11 Cases by the March 15, 2017 deadline (the "Bar Date") set by the Trustee, a deadline that was set and allowed to expire when victims believed very little money would be distributed through the Chapter 11 Cases and just weeks before the United States government announced its intention to distribute the funds it seized through the Chapter 11 Cases but only to those victims who filed proofs of claim. Thus, again by the Trustee's own math, if the Judgment is sustained on appeal, this means that more than 800,000 victims of TelexFree's fraud (more than 80% of the total victims) who have legally valid claims against the Promoters who aided and abetted that fraud that are identical to those victims who did file claims in the Chapter 11 Cases, will not participate in recoveries against those Promoters. However, if the Judgment is overturned on appeal and the PIEC is permitted to prosecute claims against Promoters, recovered funds will be distributed pro rata among all legally deserving victims of TelexFree in the pending MDL proceedings. Given the very material effect that this Judgment will have on the large majority of the victims of the fraudulent scheme (more than 800,000 people with admittedly legally valid claims), this Court should stay the Judgment pending appellate review to ensure that victims are not further harmed.

## BACKGROUND

The full background of these cases is described in great detail in the Proposed Findings of Fact and Conclusions of Law on Cross-Motions for Summary Judgment (the "Proposed Findings and Conclusions") and the PIEC's Objections to the Bankruptcy Court's December 19, 2017 Proposed Findings of Fact and Conclusions of Law on Cross-Motions for Summary Judgment [Docket No. 4] (the "PIEC Objections"). On January 15, 2016, the Trustee filed two defendant class actions against Promoters seeking to recover the Victim payments as purported fraudulent

transfers and/or preferential payments under Sections 547 and 548 of the United States Bankruptcy Code.  See Darr v. Argueta, Adv. Proc. No. 16-04006, Case No. 14-40987 (Bankr. D. Mass.); Darr v. Alecci, Adv. Proc. No. 16-04007, Case No. 14-40987 (Bankr. D. Mass.) (together, the "Promoter Adversary Proceedings").  These cases are currently pending in the Bankruptcy Court.

The PIEC has filed a complaint in In re TelexFree Securities Litigation, MDL No. 14-02566 (D. Mass.) (the "MDL"), which asserts claims against certain non-debtor Promoters and co-conspirators for, *inter alia*, aiding and abetting fraud and securities fraud, as well as unjust enrichment.  The complaint has been amended several times to include additional defendants that the PIEC has learned of through additional discovery.  Moreover, on February 24, 2016, the PIEC commenced a civil action in the United States District Court for the District of Massachusetts asserting claims against forty-seven Promoters, including a claim for unjust enrichment.  See Murdoch et al. v. TelexElectric, LLLP et al., No. 4:16-cv-40018 (the "Oliveira Action").  On June 27, 2016, Plaintiff Oliveira filed an amended complaint in the Promoter action solely to remove certain named parties.  See *Amended Complaint*, Civ. Act. No. 16-40018.  On June 26, 2017, the PIEC amended the Amended Complaint to add 199 subsequently-identified defendants to the Oliveira Action.

On October 7, 2015, the Trustee initiated the Adversary Proceeding, seeking (i) a declaratory judgment that the PIEC's unjust enrichment claims asserted in the District Court violated the automatic stay in effect as a result of the TelexFree bankruptcies and (ii) an injunction enjoining the PIEC from prosecuting those claims.  Although it is undisputed that TelexFree operated as an illegal scheme which preyed upon almost one million people (many of whom were unsophisticated immigrants to this country) while utilizing fictitious and illegitimate

"contracts" and "credits," the parties to the Adversary Proceeding dispute who is legally entitled to bring suit to reclaim monies paid by a Victim directly to a Promoter in the course of that illegal scheme (a "Participant-to-Participant Payment"), particularly when such payment never entered TelexFree: the Victims themselves or the Trustee who stands in the shoes of the criminal Debtors which never possessed or legally controlled such funds.[2]

On December 19, 2017, the Bankruptcy Court issued its Proposed Findings of Fact and Conclusions of Law on Cross-Motions for Summary Judgment (the "Proposed Findings and Conclusions") in the Adversary Proceeding, which recommended conferring on the Trustee the right to pursue claims against the Promoters. After extensive briefing by the PIEC and the Trustee to this Court respectively objecting to and supporting and the Proposed Findings and Conclusions, this Court issued a Judgment summarily adopting the Proposed Findings and Conclusions on September 26, 2018.

The PIEC has filed a Notice of Appeal of the Judgment concurrently with this Motion for a Stay Pending Appeal (the "Motion"). By this Motion, the PIEC respectfully requests that the Judgment be stayed to prevent further irreparable harm to Victims, should the Trustee assert that the PIEC's litigation against Promoters is moot if the appeal is not decided before the conclusion of the Promoter Adversary Proceedings.

## ARGUMENT

Federal Rule of Appellate Procedure 8(a)(1)(A) provides that "[a] party must ordinarily move first in the district court for . . . a stay of the judgment or order of the district court pending appeal[.]" The factors a court must consider when evaluating a request for a stay under that Rule

---

[2] It is undisputed that the vast majority of fees paid by Victims were retained by Promoters. See Proposed Findings and Conclusions at 8. It is estimated that $3.1 billion of payments were made in the course of the scheme, but that only $360 million of which was ever possessed by TelexFree itself (approximately 11.7%). Id.

are as follows: "likelihood of success on the merits, irreparable harm, balance of harm favoring the moving party and a superior claim to the general public interest." Buntzman v. Springfield Redevelopment Auth., 918 F. Supp. 29, 30 (D. Mass. 1996); see also Hilton v. Braunskill, 481 U.S. 770, 776 (1987).  Here, the balance of equities and the risk of harm that Victims face tilts decidedly in favor of staying the Judgment.

**I.      There Is A Sufficient Likelihood That the PIEC Will Prevail on Appeal.**

The PIEC is cognizant that this Court is undoubtedly confident in the soundness of its ruling.  However, where "the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay." Providence Journal Co. v. Fed. Bureau of Investigation, 595 F.2d 889, 890 (1st Cir. 1979).  In fact, when "the appeal raise[s] serious and difficult questions of law in an area where the law is somewhat unclear," the likelihood of success factor is satisfied. Exxon Corp. v. Esso Worker's Union, Inc., 963 F. Supp. 58, 60 (D. Mass. 1997) (citation omitted).  That is precisely the case here.[3]

The Judgment, if sustained, would dramatically expand fraudulent transfer law by concluding that a defeasible interest in property can be created by a fraudster's illegal contract in the absence of the fraudster ever having possession or control of the property.  As acknowledged by the Bankruptcy Court, "it is indeed the case that *all reported decisions in which courts have recognized a bankruptcy trustee's standing to bring avoidance actions to recover funds transferred by a Ponzi scheme debtor involved funds actually in the debtor's possession*."

---

[3]   The PIEC's legal positions are thoroughly explained, with citations to relevant facts and law, in the briefing underlying the Judgment.  Given this Court's familiarity with those arguments, for the sake of brevity, they are not repeated in full here and the PIEC respectfully incorporates them by reference.

Proposed Findings and Conclusions at 21 (emphasis added).  Indeed, in ***every reported case*** involving a Ponzi scheme in which the trustee has successfully brought a fraudulent transfer action, the assets transferred by the debtor were in the debtor's actual possession prior to the transfer.  See <u>Floyd v. Dunson (In re Ramirez Rodriguez)</u>, 209 B.R. 424, 429 (Bankr. S.D. Tex. 1997) (purchase price for contracts *paid directly by investors to the debtors*, deposited in accounts held or controlled by the debtors, and commingled with other investors' funds); <u>In re Universal Clearing House Co.</u>, 62 B.R. at 123 (payments made pursuant to "investor contracts" *paid directly by the investor to the debtors* and commingled in a common fund controlled by the debtors); <u>Sender v. Buchanan (In re Hedger-Invs. Assocs., Inc.)</u>, 163 B.R. 841, 850 (Bankr. D. Colo. 1994) (Ponzi scheme "*debtor came into possession* of all of these funds by the voluntary payment of the investors") (emphasis added)); <u>Dicello v. Jenkins (In re Int'l Loan Network, Inc.)</u>, 160 B.R. 1, 7-8 (Bankr. D.D.C. 1993) (investors purchased memberships by *transferring funds directly to the debtor* at their corporate headquarters, which funds the debtor commingled with its other money); <u>In re Taubman</u>, 160 B.R. 964, 972, 978 (Bankr. S.D. Ohio 1993) (*investors transferred funds directly to the debtors*, which funds were held in bank accounts controlled by the debtor and commingled with the funds of other investors); <u>Raforth v. First Nat'l Bank of Barnesville (In re Baker & Getty Fin. Servs. Inc.)</u>, 98 B.R. 300, 306 (Bankr. N.D. Ohio 1989) (*investors transferred funds directly to the debtors* and the debtor held and commingled funds in common accounts); <u>Geltzer v. Barish (In re Geltzer)</u>, 502 B.R. 760, 764, 768 (Bankr. S.D.N.Y. 2013) (*investors transferred money directly to the debtor* and all investor funds were held in commingled accounts controlled by the debtor).

The reason for that is simple: the illegal contracts that underlie the transactions comprising a Ponzi scheme cannot create any enforceable right to payment of funds that never

entered the fraudster's possession or control. It is undisputed that not a single case exists which found that payments by a third-party to another third-party under an illegal contract that never were possessed by a criminal debtor constitute property of the estate. For this reason alone, the "somewhat unclear" standard is clearly met here.

Nevertheless, there are multiple other persuasive bases for an appellate court to reach a different conclusion on the Trustee's standing to assert claims to funds the criminal Debtor never controlled or possessed. Those legal positions are raised in the comprehensive briefing already presented to this Court and include the following:

- the doctrine of *in pari delicto* precludes reliance (i.e., "enforcement") on the underlying putative "contractual" relationships that were the flesh and bones of the illegal, criminal enterprise[4]; and

- the particularized harm requirement was met because a Victim has a direct claim against a Promoter based on their direct interaction in which the monies passing from the victim to the promoter occurred, which money never thereafter was possessed or controlled by the TelexFree estates.

Under the foregoing standards, there is sufficient probability that the Judgment will be reversed on appeal to merit a stay under Rule 8 of the Federal Rules of Appellate Procedure.

**II.  In Light of the Irreparable Harm to the Victims, the Public Interest, and the Minimal Risk of Injury to the Trustee, the Balance of Equities Warrants a Stay.**

Even where a district court may believe that there is "almost no likelihood of success on the merits of [an] appeal," the potential of rendering moot the relief sought by an appellant absent a stay is sufficient to satisfy Rule 8(a). Buntzman, 918 F. Supp. at 30 (granting stay pending appeal where there was not a single reported case supporting the legal relief sought so that "entire appellate process [was not] mooted"). If this Court does not stay the Trustee's

---

[4]  The *in pari delicto* issue was not addressed at all by the Bankruptcy Court in its Proposed Findings and Conclusions and then again not addressed at all by the short-form Judgment.

proceedings against the Promoters, and the Trustee asserts that the appeal is moot, Victims may suffer irreparable harm.

If the Judgment is not stayed, it is likely that the Trustee will continue to pursue the Promoter Adversary Proceedings.  Should the Trustee succeed in these proceedings, recover the funds in dispute, and distribute the funds through the Chapter 11 Cases, the Trustee may argue that it would be virtually impossible to unwind those transactions, thereby rendering the appeal moot.  If the Court of Appeals agrees, Victims would lose any right to seek to recover money that they delivered directly to Promoters, and more than 800,000 of TelexFree's Victims who did not file proofs of claim in the Chapter 11 Cases will be excluded from any distribution as a result of the actions against Promoters.

By contrast, the resultant harm to the Trustee if the Judgment is stayed is negligible.  If the Judgment be stayed through the duration of the appeal, the Trustee will face no harm in delaying prosecution of the Promoter Adversary Proceedings.  If the Trustee succeeds on appeal, the status quo will be restored, and the Trustee will be free to continue its prosecution, without risk of the funds at issue disappearing.

The interests of the general public weigh in favor of staying the Judgment pending appeal.  The public interest in ensuring the appropriate resolution of issues effecting a class of one million members is particularly high, particularly as if the Trustee succeeds, funds will be disbursed to only fourteen percent of Victims, whereas if the PIEC's appeal is successful, ***all*** Victims will share pro rata in the recoveries.  The public also possesses a significant interest in preventing the bankruptcy process from being used to benefit the estate of bankrupt criminal debtors and to elevate the claims of certain of its creditors over those of the direct victims of its fraudulent activities.

Unless a stay is issued, upon a reversal by the appellate court, this Court will have allowed the bankruptcy process to become a vehicle for TelexFree to impose further injury upon its victims: prohibiting Victims, who have suffered direct and particularized harm at the hands of Promoters, from asserting claims directly against these Promoters.  A stay of the Judgment should be granted to permit the effective resolution of its appeal.

### III.     The Court Should Grant the Stay Without a Bond.

The PIEC respectfully requests that this Court waive any requirement for a bond in granting a stay of the Judgment.  This Court has full discretion to grant the stay on any terms it sees fit, including imposing a stay without a bond.  See Westfield High Sch. L.I.F.E. Club v. City of Westfield, 249 F. Supp. 2d 98, 128 (D. Mass. 2003) ("[d]etermining the necessity of posting security and the amount thereof is within the sound discretion of the Court.").  Importantly, the Court "need not require a bond if it would be unnecessary to protect the interests of the appellee."  See Exxon Corp., 963 F. Supp. at 60.   Here, a bond is not necessary to protect the Trustee's interests, as the status quo will be restored if the Trustee wins on appeal, and the Trustee will be free to continue prosecuting the Promoter Adversary Proceedings.  Moreover, because the Judgment is a non-monetary judgment, the Trustee will not suffer any harm that would warrant a bond if the Judgment is stayed pending the appeal.

The First Circuit has also recognized an exception to requiring a bond in suits to enforce public interests.  See Crowley v. Local No. 82, Furniture & Piano Moving, 679 F.2d 978, 1000 (1st Cir.1982), rev'd on other grounds, 467 U.S. 526 (1984).  The PIEC represents a putative class of indigent victims who have already lost, collectively, well over one billion dollars as a result of TelexFree's fraudulent scheme.  There is certainly a public interest in ensuring that the

approximately one million victims of TelexFree have the right to stay the Judgment to ensure effective resolution upon appeal, without the burden of posting a bond.

## CONCLUSION

For the reasons set forth above, the PIEC respectfully request that the Court stay its Judgment of September 26, 2018, pending resolution of the PIEC's appeal to the Court of Appeals for the First Circuit.

Dated: October 10, 2018

Respectfully submitted,

**BONSIGNORE, PLLC**

*/s/ Robert J. Bonsignore*
Robert J. Bonsignore (NH Bar 21241)
Lisa Sleboda (PA No. 71580)
3771 Meadowcrest Drive
Las Vegas, Nevada 89121
Telephone:  781-856-7650
rbonsignore@classactions.us
*Interim Lead Counsel*

**BROWN RUDNICK LLP**

*/s/ William R. Baldiga*
William R. Baldiga (BBO #542125)
James W. Stoll (BBO # 544136)
Kellie W. Fisher (BBO #693590)
One Financial Center
Boston, MA 02111
Telephone:  (617) 856-8200
Facsimile:   (617) 856-8201
wbaldiga@brownrudnick.com
jstoll@brownrudnick.com
kfisher@brownrudnick.com

*For the Plaintiffs' Interim Executive Committee*

## LOCAL RULE 7.1(A)(2) CERTIFICATION

The PIEC made several attempts to contact the Trustee's counsel in an effort to confer regarding this Motion, and it has informed Trustee's counsel that it would be filing this Motion seeking a stay of the Judgment. The Trustee's counsel did not respond to the PIEC's repeated communications.

## **CERTIFICATE OF SERVICE**

I, William R. Baldiga, hereby certify that on October 10, 2018, I caused a copy of the foregoing Motion to be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, by first class mail, postage prepaid.

Dated: October 10, 2018
Boston, Massachusetts

/s/ *William R. Baldiga*
William R. Baldiga, Esq.
Brown Rudnick LLP
One Financial Center
Boston, MA  02111
(617) 856-8200